### SHERMAN v. UNITED STATES.

(Circuit Court of Appeals, Sixth Circuit. January 6, 1926.)

No. 4306.

**1. Intoxicating liquors 2½, New, vol. 8A Key-No. Series—Congress may prohibit all sales of intoxicating liquor, if suitable provision is made for nonbeverage sales.**

Congress may prohibit all sales of intoxicating liquor, whether for beverage purposes or not, if suitable provision is made for nonbeverage sales, consistent with purpose of constitutional amendment.

**2. Criminal law 26—Mere intent to violate law, not followed by actual violation, is not a crime.**

Under general principles, except in conspiracy, mere intent to violate law, not followed by actual violation, is not a crime.

**3. Intoxicating liquors 131—Sale of medicinal preparation to purchaser, who intends to use it as evidence, not an offense.**

Under National Prohibition Act, tit. 2, § 4 (Comp. St. Ann. Supp. 1923, § 10138½b), forbidding sale of medicinal preparations for beverage purposes, or under circumstances from which seller might reasonably deduce purchaser's intention to so use them, purchaser must intend beverage use, and sale to one who purchased for use as evidence did not sustain seller's conviction.

In .Error to the District Court of the United States for the Western District of Michigan; Clarence W. Sessions, Judge.

Augustus H. Sherman was convicted of violating the National Prohibition Act, and he brings error. Reversed and remanded for new trial.

Herbert L. Parsille, of Sault Ste. Marie, Mich., for plaintiff in error.

Edward J. Bowman, U. S. Atty., of Grand Rapids, Mich. (Howard A. Ellis, Asst. U. S. Atty., of Grand Rapids, Mich., on the brief), for the United States.

Before DENISON and DONAHUE, Circuit Judges, and HICKENLOOPER, District Judge.

PER CURIAM. Sherman sold to Oleson a four-ounce bottle of Jamaica ginger. Section 4 of title 2 of the National Prohibition Act (Comp. St. Ann. Supp., 1923, § 10138½b) provides that certain groups of medicinal preparations (by definitions effectively including this Jamaica ginger), although alcoholic and intoxicating, shall not be subject to the provisions of the act, but continués: "Any person who shall knowingly sell [such preparations] for beverage purposes, * * * or * * * under circumstances from which the seller might reasonably deduce the intention of the purchaser to use them for such purposes, * * * shall be subject to the penalties [of this act]." Because of selling this preparation to Oleson, Sherman was indicted on two counts—one for having knowingly sold it; the other for having sold it under circumstances from which he should reasonably have deduced Oleson's intention to use it for a beverage. He was convicted on both. The undisputed fact is that Oleson did not use this particular purchase for a beverage, and. never intended to. He bought it at the request of an officer for the sole purpose of turning it over to the officer, for evidential and not for drinking purposes, and this was done. So we are called upon to declare the intent of the law as applicable to such a situation.

It is urged that there is no evidence that, as to this particular sale, Sherman should have deduced that it was Oleson's intention to use his purchase to quench a thirst rather than to subdue an ache. The majority of the court find sufficient evidence to this effect. This conclusion leaves the conviction best supported, if supportable at all, by the "circumstances from which" clause, and presents the question whether the seller's intent or reason to believe, which can make him guilty,

may be merely his independent purpose or conclusion, or whether it can exist only as collateral to the purchaser's actual intent. We say that his conviction is best supported by the latter clause, because, as to the former, "knowingly sell," it is difficult to conceive knowledge of a thing which does not exist, while the "circumstances under which" clause is, if read literally, open to be construed as wholly satisfied by the seller's state of mind. For a concrete example of this construction, we observe that, if a purchaser really needed the Jamaica ginger for medicine, and intended so to use it, and did so use it, but if his appearance or answers justified the inference that he probably wanted to drink it, the sale would be a crime by the seller. Did Congress so intend?

[1] The difference between such a sale and an ordinary one of intoxicating liquor is fundamental. The constitutional power is clear to prohibit broadly all sales of intoxicating liquor, whether for beverage purposes or not, provided suitable provision is made for such nonbeverage sales as are consistent with the purpose of the constitutional amendment, and so we find section 3 (Comp. St. Ann. Supp. 1923, § 10138½aa) containing a general and initial prohibition of all sales of intoxicating liquor. However, medicinal preparations are not within the ordinary definition of intoxicating liquor, and perhaps not within the definition of section 1 (Comp. St. Ann. Supp. 1923, § 10138½), and to clear the doubt, if there is any, the first part of section 4 exempts them wholly from the operation of the act. Up to this point, the situation, then, is that the sale of what is commonly called intoxicating liquor is generally forbidden and the sale of these medicinal preparations is generally permitted. Thus the two transactions are approached from opposite viewpoints, and it would seem that the burden of establishing the exception is oppositely imposed.

[2, 3] It is contrary to the general principles of criminal law—except in conspiracy—that the mere intent to violate the law, not followed by actual violation, should be a crime. We think the ultimate thing at which this part of section 4 was aimed was such intoxication as might be caused through the purchase of these preparations by one who intended to use them to drink, and we conclude that participation by the seller in this actual intent by the purchaser furnishes the only reasonable basis for transforming the otherwise permitted sale into a prohibited one. It is the reasonable and consistent construction of this part of the statute to regard it

as directed against those sales which were in fact for drinking purposes, and where the seller either knew or should have known this purpose. It follows that, unless the purchaser at the time of the purchase intends beverage use, there is no violation of law in which the seller can participate, either by direct purpose or by equivalent indifference and negligence.

We get no helpful analogy from the numerous instances of a transaction by two parties, where the criminal intent of only one of them is held to be sufficient to make him guilty—like an acceptance of a bribe offered only as a test, or like the other familiar entrapment cases. In all of those the necessary intent of the respondent rests sufficiently upon the act done by him; in the present case the respondent's effective intent is, as we construe the statute, declared to rest, necessarily and only, upon the actual intent of the other party to the transaction.

The judgment and sentence must be vacated, and the case reversed for a new trial upon these two counts. This result makes it unnecessary to consider whether section 29 of the act (Comp. St. Ann. Supp. 1923, § 10138½p) authorizes imprisonment for the first offense of selling Jamaica ginger.