NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

BRENTWOOD SCOTTSDALE LLC, an Arizona limited liability company,
*Plaintiff/Appellee*,

*v.*

DAVID JAMES SMITH, a married person dealing with his sole and
separate property, *Defendant/Appellant*.

No. 1 CA-CV 14-0067

FILED 2-19-2015

Appeal from the Superior Court in Maricopa County
No.  CV2012-015393
The Honorable Lisa Daniel Flores, Judge

**AFFIRMED**

COUNSEL

Steve Brown & Associates, LLC, Phoenix
By Steven J. Brown, Steven D. Nemecek
*Counsel for Plaintiff/Appellee*

Law Offices of Matthew D. Rifat, LLP, San Diego, CA
By Matthew D. Rifat
*Counsel for Defendant/Appellant*

---

**MEMORANDUM DECISION**

Judge Patricia K. Norris delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Randall M. Howe joined.

---

**N O R R I S**, Judge:

¶1        Defendant/Appellant David James Smith appeals summary judgment in favor of Plaintiff/Appellee Brentwood Scottsdale, LLC on its claim for a deficiency judgment.  On appeal, Smith argues the superior court should not have granted summary judgment to Brentwood because it failed to show it was entitled to judgment as a matter of law.  Smith also argues the court impermissibly relied on arguments and facts Brentwood raised for the first time in its reply in support of its summary judgment motion. We disagree with Smith's arguments and affirm the superior court's judgment in favor of Brentwood.

**FACTS AND PROCEDURAL BACKGROUND**

¶2        In 2005, El Presidio of Scottsdale, L.L.C. borrowed $9,310,000 from Archon Financial, L.P., to purchase Scottsdale, Arizona commercial property.  To evidence and secure the loan, El Presidio executed a Note and a Deed of Trust, Assignment of Rents, Security Agreement, and Fixture Filing.  At the same time, Smith executed a guaranty in Archon's favor guarantying El Presidio's obligations under the loan documents ("Guaranty").

¶3        Thereafter, Archon transferred the Note and Deed of Trust to LaSalle Bank National Association; Bank of America, N.A., successor by merger with LaSalle, transferred the Note and Deed of Trust to GCCFC 2005-GG5 East Vista Bonita Drive, LLC; and GCCFC transferred the Note and Deed of Trust to Brentwood.

¶4        El Presidio defaulted under the Note and Deed of Trust and eventually filed for bankruptcy. After obtaining an order from the bankruptcy court lifting the automatic stay, the trustee under the Deed of Trust sold the property at a trustee's sale.  Brentwood was the successful bidder at the trustee's sale.  Because the fair market value of the property was less than the unpaid balance under the Note as of the date of the trustee's sale, Brentwood sued Smith, as El Presidio's guarantor, to recover

a deficiency judgment. *See* Ariz. Rev. Stat. ("A.R.S.") § 33-814 (2014).[1] Thereafter, the superior court granted Brentwood's motion for summary judgment and entered a deficiency judgment against Smith.

## DISCUSSION

I.      Transfer of the Guaranty

**¶5**      Smith first argues Brentwood failed to meet its burden of proof on summary judgment because it "offered no competent admissible evidence" that it was the assignee and, thus, the owner of the Guaranty. Viewing the facts in the light most favorable to Smith, as the non-moving party, but determining de novo whether entry of summary judgment was proper, we disagree. *See Andrews v. Blake*, 205 Ariz. 236, 240, ¶¶ 12-13, 69 P.3d 7, 11 (2003).

**¶6**      In general, transfer of a principal obligation operates as an assignment of a related guaranty. *See* Restatement (Third) of Suretyship & Guaranty § 13(5) (1996). Subject to certain exceptions not argued here, "an assignment by the obligee of its rights against the principal obligor arising out of the underlying obligation operates as an assignment of the obligee's rights against the secondary obligor arising out of the secondary obligation." *Id.* The comment to this section explains:

> A secondary obligation, like a security interest, has value only as an adjunct to an underlying obligation. It can usually be assumed that a person assigning an underlying obligation intends to assign along with it any secondary obligation supporting it. Thus, unless there is agreement to the contrary or assignment is prohibited pursuant to subsection (1), assignment of the underlying obligation also assigns the secondary obligation.

Restatement (Third) of Suretyship & Guaranty § 13 cmt. f. Other jurisdictions have applied this general rule of law. *See, e.g., LPP Mortgage, Ltd. v. Boutwell*, 36 So. 3d 497, 501 (Ala. 2009) ("[W]e are aware of the general

---

[1]Although the Arizona Legislature amended certain statutes cited in this decision after the date of the events giving rise to this dispute, the revisions are immaterial to the resolution of this appeal. Thus, we cite to the current version of these statutes.

rule that an assignment of a debt passes to the assignee any security for the payment thereof, and a guaranty passes with the assignment of a note."); *Kensington Partners, LLC v. Beal Bank Nevada*, 715 S.E. 2d 491, 494 (Ga. Ct. App. 2011) ("[T]ransfer of the underlying principal obligations operates as an assignment of the guaranty."); *Wells Fargo Bank Minnesota, N.A. v. Rouleau*, 46 A.3d 905, 909, ¶ 10 (Vt. 2012) ("Because of a guaranty's link to the principal obligation, it follows that an obligee's assignment of the principal obligation is sufficient to manifest the requisite intent to assign the guaranty.") Applying this rule here, the assignment of the Note operated as an assignment of the Guaranty.

¶7 Further, the Guaranty contains language supporting application of this general rule. As relevant, the Guaranty states:

> Guarantor hereby irrevocably and unconditionally guarantees to Lender *and its successors and assigns* the payment and performance of the Guaranteed Obligations (as herein defined) as and when the same shall be due and payable . . . .
>
> . . . .
>
> This Guaranty may be enforced by Lender *and any subsequent holder of the Note* and shall not be discharged by the assignment or negotiation of all or part of the Note.
>
> . . . .
>
> This Guaranty shall be binding upon and inure to the benefit of the parties hereto *and their respective successors, assigns* and legal representatives . . . .

(Emphasis added.).

¶8 Because assignment of the Note operated as an assignment of the Guaranty, Brentwood offered competent admissible evidence it was the assignee and owner of the Guaranty.

II. Assignment of the Note

¶9 Smith next argues Brentwood failed to meet its burden of proof on summary judgment because it "offered no competent admissible evidence" that it was the assignee and, thus, the owner of the Note. In

making this argument, Smith challenges the validity of the signatures on the documents transferring the Note. Applying the applicable standards of review, *see supra* ¶ 5, we disagree.

**¶10** The Note, as a negotiable instrument, *see* A.R.S. § 47-3104 (2005), is subject to the Arizona statute governing "proof of signature" as applied to transfers of negotiable instruments. That statute provides in relevant part:

> In an action with respect to an instrument, the authenticity of, and authority to make, each signature on the instrument is admitted unless specifically denied in the pleadings. If the validity of a signature is denied in the pleadings, the burden of establishing validity is on the person claiming validity, *but the signature is presumed to be authentic and authorized* unless the action is to enforce the liability of the purported signer and the signer is dead or incompetent at the time of trial of the issue of validity of the signature.

A.R.S. § 47-3308(A) (2005) (emphasis added). Title 47 further provides that "[w]henever this title creates a 'presumption' with respect to a fact, or provides that a fact is 'presumed', the trier of fact must find the existence of the fact unless and until evidence is introduced that supports a finding of its nonexistence." A.R.S. § 47-1206 (Supp. 2014).

**¶11** We have analyzed the application of A.R.S. § 47-3308(A) before, concluding:

> Under this statute, where the effectiveness of a signature is put in issue by a specific denial, the signature is presumed to be genuine or authorized, and the party claiming under the signature is not put to his proof until the party making the denial has produced "some evidence" that would support a finding that the signature is forged or unauthorized. . . . Further, demonstrating the other party's apparent lack of evidence does not constitute producing "evidence" of forgery or lack of authorization

sufficient to rebut the presumption of A.R.S. §
47–3307(A)(2) [now, § 47-3308(A)].

*Valley Bank of Nevada v. JER Mgmt. Corp.*, 149 Ariz. 415, 418-19, 719 P.2d 301, 304-05 (App. 1986);[2] *see also In re Connelly*, 487 B.R. 230, 241 (Bankr. D. Ariz. 2013).

**¶12**　　　　　Section 47-3008 is practically identical to Uniform Commercial Code ("U.C.C.") section 3-308. The official comment to that section explains as follows:

> *"Presumed" is defined in Section 1-201 and means that until some evidence is introduced which would support a finding that the signature is forged or unauthorized, the plaintiff is not required to prove that it is valid.* The presumption rests upon the fact that in ordinary experience forged or unauthorized signatures are very uncommon, and normally any evidence is within the control of, or more accessible to, the defendant. The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence. The defendant's evidence need not be sufficient to require a directed verdict, but it must be enough to support the denial by permitting a finding in the defendant's favor. Until introduction of such evidence the presumption requires a finding for the plaintiff.

U.C.C. § 3-308, cmt. 1 (emphasis added); *see also* 2 James J. White & Robert S. Summers, *Uniform Commercial Code* § 17:6 (6th ed. 2010) ("Once denied, the party claiming validity has the burden of proof, but this will almost always be met prima facie since there is a rebuttable presumption under 3-308(a) that the signature is 'authentic and authorized.'"); 6B Anderson,

---

[2]Arizona Rule of Evidence 902 provides a list of items that are self-authenticating and "require no extrinsic evidence of authenticity." That list includes "commercial paper, a signature on it, and related documents" as well as "[a] signature, document, or anything else that a statute declares to be presumptively or prima facie genuine or authentic." Ariz. R. Evid. 902(9)-(10).

*Uniform Commercial Code* § 3-308:1 (3d. ed. 1983) ("The defendant is therefore required to make some sufficient showing of the grounds for the denial before the plaintiff is required to introduce evidence.").[3]

**¶13**     Here, in support of its motion for summary judgment, Brentwood offered the sworn declaration of its manager.  The manager avowed to the assignments of the Note and attached copies of the documents evidencing each of the transfers.  Section 47-3308(A) established a presumption that the signatures on those documents were authorized and authentic.

**¶14**     To create an issue of fact regarding the validity of the signatures transferring the note under the statutory presumption, Smith needed to present "some evidence" the signatures were unauthorized.  In responding to Brentwood's motion, however, Smith produced no evidence the signatures on the documents were not authorized.  Accordingly, the record before the superior court failed to so show a "genuine dispute as to any material fact," Ariz. R. Civ. P. 56(a), regarding the validity of the signatures on the documents transferring the Note.  Thus, the superior court properly granted summary judgment to Brentwood on this issue.

III.     Brentwood's Reply in Support of Its Motion for Summary Judgment

**¶15**     Finally, Smith argues the superior court impermissibly considered new arguments and facts raised by Brentwood for the first time in its reply in support of its motion for summary judgment.  We reject this argument.

**¶16**     In support of its reply, Brentwood filed a supplemental declaration avowing to additional facts and attaching additional

---

[3]Other jurisdictions have applied the presumption set forth in U.C.C. § 3-308 to uphold the validity of signatures affixed to a document in a representative capacity. *See In re Phillips,* 491 B.R. 255, 273 (Bankr. D. Nev. 2013) (when party challenges individual's authority to sign under power of attorney challenging party must introduce evidence to rebut presumption of authority); *U.S. Bank Nat'l Ass'n v. Dumas,* 144 So. 3d 29, 40 (La. Ct. App. 2014), *cert. denied* 147 So. 3d 1119 (La. 2014) (bank was not required to present corporate resolutions to prove authority of representatives signing promissory note); *In re Bass,* 738 S.E. 2d 173, 177 (N.C. 2013) (mere assertion that signature was unauthorized insufficient to rebut presumption of validity).

documentary evidence. Smith filed an objection to the reply, which the superior court overruled.

**¶17** Our review of the superior court's summary judgment ruling reveals the court relied on only one fact contained in the manager's supplemental declaration — that Brentwood possessed the originals of all documents related to the loan. Brentwood merely introduced this fact to rebut Smith's responding arguments. Moreover, Smith did not object to this portion of the manager's supplemental declaration avowing that Brentwood was in possession of the loan documents.

**¶18** Further, even assuming the superior court should not have relied on this fact, *see Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209, 214, ¶ 20, n.3, 292 P.3d 195, 200, n.3 (App. 2012), Brentwood was entitled to summary judgment without it. *See supra* ¶¶ 8, 14. Therefore, any alleged error by the superior court in considering this fact was harmless.[4] *See State ex rel. Willey v. Whitman*, 91 Ariz. 120, 127, 370 P.2d 273, 278 (1962) (to justify the reversal of a case, there must not only be error, but it must be prejudicial to the substantial rights of the person assigning this error).

---

[4]No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

Ariz. R. Civ. P. 61.

## CONCLUSION

**¶19**        For the foregoing reason we affirm the superior court's judgment awarding Brentwood a deficiency judgment against Smith.



Ruth A. Willingham · Clerk of the Court
FILED: ama